David Kupetz (State Bar No. 120562)
david.kupetz@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
Telephone: (213) 485-1500
Facsimile: (213) 485-1200

Shalom Jacob (*Pro Hac Vice* application forthcoming)
sjacob@lockelord.com
LOCKE LORD LLP
Brookfield Place
200 Vesey Street, 20th Floor
New York, NY 10281
Telephone: (212) 415-8600

Attorneys for Plaintiff
MARICH BEIN LLC

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARICH BEIN LLC,<br><br>                    Plaintiff,<br><br>vs.<br><br>THE LITIGATION PRACTICE GROUP, PC and OAKSTONE LAW GROUP PC,<br><br>                    Defendants. | Case No.<br><br>**COMPLAINT FOR:**<br>**1. Breach of Contract;**<br>**2. Intentional Interference with Contractual Relations;**<br>**3. Conversion;**<br>**4. Avoidance and Recovery of Fraudulent Transfers;**<br>**5. Declaratory Relief; and**<br>**6. Temporary Restraining Order, and Preliminary and Permanent Injunctions**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Marich Bein LLC ("**Plaintiff**"), demanding a jury trial for any issues triable by a jury, alleges:

## NATURE OF THE CASE

1. This is an action for damages and injunctive relief by which Plaintiff seeks to enforce, and to enjoin defendants from interfering with, Plaintiff's lawful exercise of rights and privileges granted to it by defendant The Litigation Practice Group PC ("**LPG**"). LPG bills itself as a law firm that, among other things, assists consumers who may be experiencing financial difficulties in obtaining debt relief. LPG's clients ("**Clients**") enter legal services agreements pursuant to which they authorize a series of monthly withdrawals to be made from their bank accounts. Plaintiff, which is not a law firm, is in the business of servicing and purchasing accounts receivable.

2. This action arises from an ongoing scheme through which LPG and defendant Oakstone Law Group, PC ("**Oakstone**"), both law firms under the direction of a disbarred lawyer, Tony Diab ("**Diab**"), are attempting to avoid LPG's contractual agreements with Plaintiff pursuant to which LPG: (a) assigned to Plaintiff the exclusive right to service all of LPG's approximately 50,000 accounts receivable with its Clients, including without limitation the right to withdraw monthly payments from the Clients' bank accounts; and (b) assigned to Plaintiff, for value, the ownership of 15,000 to 20,000 of such accounts receivable.

3. In furtherance of the scheme, on information and belief, LPG has purported to, *inter alia*: (a) terminate contracts with at least 25,000 of its Clients; (b) referred and transferred, for no or inadequate consideration, at least 15,000 of those Clients to Oakstone (a newly organized law firm that is, on information and belief, LPG's alter ego)[1]; (c) assisted Oakstone in entering into "new" contracts with the Clients; (d) notified Plaintiff that Plaintiff's rights to the make withdrawals from the

---

[1] On information and belief, LPG is referring and transferring other Clients to other law firms.

2

Clients' bank accounts has been terminated; (e) terminated Plaintiff's access to data necessary to allow Plaintiff to fully exercise the rights granted to it, and to which data Plaintiff is contractually entitled; and (f) disavowed LPG's agreements with Plaintiff.

4. Oakstone has threatened to withdraw payments itself from Clients' accounts, an action which, if carried out, would contravene Plaintiff's contractual rights and result in double withdrawing from such accounts by Oakstone. Such actions would thus not only interfere with Plaintiff's ability to exercise the rights it obtained from LPG but, of equal importance, would also impose hardships on the Clients, many of whom are, as evidenced by their retention of LPG in the first instance, already financially stressed. In addition to the obvious deleterious financial consequences, such double-withdrawals will also result in demands for refunds from the Clients, the likely cancellation of their legal services agreements, and a withdrawal of any authorization by them to withdraw funds from their bank accounts.

5. Moreover, Oakstone has sent cease and desist letters to one or more banks, notifying such banks of the above-described actions and demanding that such banks cease and desist from processing debits on the Clients' bank *unless* those debits have been initiated by Oakstone or others acting at Oakstone's direction. Indeed, in at least one instance, Oakstone has also filed a lawsuit against a bank, BankUnited, N.A. ("**BankUnited**"), seeking temporary and permanent injunctive relief barring BankUnited from processing withdrawals on the Clients' bank accounts other than those consented to by Oakstone. Plaintiff was not made a party to that suit, and the same appears to reflect an effort by Oakstone to, in effect, adjudicate Plaintiff's rights in and to the said accounts without providing any advance notice to Plaintiff, or any opportunity to be heard, in opposition.

6. The wrongful coordinated actions of LPG and Oakstone are causing damage, including irreparable damage, to Plaintiff. Plaintiff has no adequate remedy at law by which it may obtain redress for the harm caused by LPG and Oakstone's actions. Therefore, Plaintiff seeks recovery of damages and this Court's declaration of

1  Plaintiff's contractual rights and entry of orders enjoining Defendants from interfering
2  with Plaintiff's exercise of such rights.

### PARTIES

7. Plaintiff is a limited liability company organized under the laws of the state of New York. Plaintiff's sole member is Hershy Deutsch. He is a citizen and resident of the state of New Jersey. Plaintiff's principal place of business is located in the state of New York.

8. Defendant LPG is a corporation organized under the laws of the state of California. According to the records of the California Secretary of State, LPG's principal place of business is located in Tustin, California. Daniel S. March ("**March**") is LPG's Director, CEO, CFO and Secretary. LPG's website and its agreements with Plaintiff further state that March is LPG's Managing Shareholder.

9. Defendant Oakstone is a newly formed corporation organized under the laws of the state of California. Oakstone's initial filing with the California Secretary of State was made on January 9, 2023. Oakstone's principal place of business is in La Jolla, California.

10. On information and belief, at all times relevant to this Complaint, LPG and Oakstone were co-conspirators, agents, servants, employees, alter egos, successors-in-interest, subsidiaries, affiliated companies or corporations, and joint ventures of each other, and were, as such, acting within the course, scope, and authority of each other. Further, on information and belief, each of LPG and Oakstone acted in concert with, and with the consent of, each other, and each of them ratified or agreed to accept the benefits of the conduct of the other.

### JURISDICTION AND VENUE

11. For purposes of 28 U.S.C. § 1332, Plaintiff is a citizen of the state of New Jersey, and defendants are citizens of the state of California. The matter in controversy exceeds the sum of $75,000.00, exclusive of interest and costs. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a).

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

12. Venue is proper in this District pursuant to 28 U.S.C. § 1391. A substantial part of the events or omissions giving rise to the claims stated herein occurred at LPG's office in Tustin, California, within this judicial district.

13. Defendants, both California corporations with their principal places of business in such state, are subject to this Court's personal jurisdiction with respect to this action.

## STATEMENT OF FACTS

14. LPG is a law firm that claims to specialize in resolution of consumer debt. Although it claims otherwise, LPG is, in reality, run entirely by Diab, a former attorney who has been disbarred in two states following disciplinary proceedings for serious ethics violations, including stealing client funds and forging the signature of a judge.

15. On information and belief, at times relevant to this complaint, LPG had more than 50,000 active client accounts nationwide.

16. On or about September 18, 2022, Plaintiff and LPG entered into an *Assignment of Servicing Rights* ("**Assignment**"), pursuant to which LPG agreed, *inter alia*, as follows:

> **Article I. ASSIGNMENT**
>
> Section I.1 Assignment of Servicing Rights. [LPG], by these presents does hereby presently, unconditionally, absolutely and irrevocably assign, transfer, convey and set over to [Plaintiff] (it being intended by [LPG] that such assignments constitute present, absolute and unconditional assignments and not assignments for additional security only, but such assignment shall constitute security for [LPG]'s obligations to [Plaintiff] or its affiliates), all of [LPG]'s right, title and interest in and to the Servicing Rights, including, without limitation, any right of [LPG] or

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

any of its affiliates (whether such rights are currently existing or arising in the future) to service collection of subscription fees, return payment fees, or any other fee or payment resulting from any Customer's engagement with [LPG] or any of its affiliates, or give notices, sue for payment under the Customer contracts or to take any action at law or in equity relating to the Customer contracts.

**Article II.  SERVICING OF CONTRACTS**

Section I.2 [*sic*] Appointment as Third-Party Servicer. . . . [LPG] hereby retains [Plaintiff] to act as third-party [Plaintiff] for the Receivables . . . .

Section I.3 [*sic*] Servicing of Receivables. . . . [LPG] agrees to provide [Plaintiff] and its subcontractors with such assistance in the servicing, collection and administration of any Receivable as may be requested by [Plaintiff] from time to time.

Section I.4 [*sic*] Limited Power of Attorney. [LPG] hereby irrevocably appoints and empowers [Plaintiff] as [LPG]'s true and lawful attorney-in-fact, with full power of substitution, to endorse and promptly deposit on [LPG]'s behalf any checks or other instruments made payable to [LPG] and submitted by a Customer as payment on any Receivable, and to take any other action relating to the Receivables in [LPG]'s name and place that [Plaintiff] deems advisable and consistent with the terms of this Agreement.  This power of attorney shall be deemed to a right coupled with an interest.

\*     \*     \*

**ARTICLE III.  OBLIGATIONS OF MERCHANT**

Section III.1 <u>Access to All Digital Records, Databases, and Applications</u>.  [LPG] shall provide [Plaintiff] any information requested by [Plaintiff] with respect to its Customers and the Customer contracts.  At all times, [Plaintiff] must have unfettered access to all software applications used by [LPG], including, but not limited to, Debt Pay Pro, Snowflake, or any other databases used by [LPG] in its ordinary course of business.

\*     \*     \*

Section III.3 <u>No Impairment</u>.  [LPG] will not take any action (including placing or allowing placement of a lien or security interest on any Purchased Receivable) or make any omission that has, individually or in the aggregate, an adverse effect on any Purchased Receivable or on [Plaintiff]'s ability to collect on any Purchased Receivable.

Section III.4 <u>Amounts Received</u>. . . . [LPG] shall not in any way encourage or cause any proceeds to be paid, processed, settled or delivered to any person or account other than the [Plaintiff]'s account, and shall take all affirmative steps at its expense and as necessary or appropriate to prevent any such occurrence from recurring. [LPG] is prohibited from instructing any Customer to pay [LPG] or any other third party on a Receivable or otherwise suggest that Customer may make a payment to [LPG] or any other third party instead of paying [Plaintiff] to satisfy its payment obligation.

\* \* \*

**ARTICLE VI.  MISCELLANEOUS**

Section I.7 [*sic*]  Term and Termination.  This Assignment shall commence on [September 19, 2022] and shall continue in full force and effect, until released by [Plaintiff].  [LPG] may terminate this Assignment at any time and for any reason provided that the total amount of Purchased Receivables held by [Plaintiff] and its affiliates are less than $1,000,000.00.[2]

\* \* \*

Section VI.1[*sic*]  Exclusivity.  [LPG]understands and agrees that the relationship set forth in this Assignment is exclusive.  [LPG] forgoes any right to contract with other parties for the same or similar services provided by [Plaintiff] under this Assignment.

(Underscoring and bolding in original.)

17.  Since entering into the *Assignment*, Plaintiff has exercised the rights granted to it therein and has complied with the terms thereof.

18.  In addition to the *Assignment*, on or about August 18, September 21, October 6 and November 14, 2022, in return for the payment of amounts totaling in excess of $10,000,000, LPG entered into *Accounts Receivable Purchase Agreements* ("**Agreements**") pursuant to which LPG sold, assigned, transferred and delivered to Plaintiff all of LPG's right, title and interest in and to certain of LPG's client accounts ("**Purchased Accounts**"), totaling between 15,000 and 20,000 accounts.  Each of the *Agreements* was executed on behalf of LPG by Daniel S. March as Managing Shareholder and also by Diab.

---

[2]  The total amount of Purchased Receivables now held by Plaintiff is in excess of $1,000,000.00.

8

19. In the *Agreements*, LPG warranted that:

    A. LPG was conveying to Plaintiff good, valid, transferable and marketable title to all of the Purchased Accounts, free and clear of all liens; and

    B. LPG's delivery of the Purchased Accounts to Plaintiff would not conflict with, result in any violation of, or default under, or give rise to a right of termination or modification of any obligation, or loss of any benefit, under any contract to which LPG is a party, including any assigned contract.

20. In the *Agreements*, LPG further agreed:

    A. To indemnify and hold Plaintiff harmless against, *inter alia*, all claims, losses, liabilities, damages, deficiencies, diminutions in value, and costs sustained by Plaintiff as a result of, arising out of, or in connection with any inaccuracy in or breach of any representation or warranty or any breach or non-fulfillment of any obligation to be performed by LPG under its agreements with Plaintiff;

    B. The *Agreements* would be binding upon Plaintiff and Plaintiff's successors and permitted assigns;

    C. Neither the *Agreements* nor any rights or obligations of a party thereto shall be assigned, unless to an affiliate of the assigning party, without the prior written consent of the other party; and

    D. Irreparable damage would occur if any provision of the *Agreements* was not performed in accordance with the terms thereof and that the parties would be entitled to specific performance thereof, in addition to any other remedy to which they are entitled under the *Agreements*, at law or in equity.

9

21. In an abundance of caution, Plaintiff has perfected any security interests under its agreements with LPG by filing appropriate UCC financing statements. However, such perfection is unnecessary since, under the Agreements, LPG sold the Purchased Accounts to Plaintiff.

22. Based on the foregoing agreements, and the promises, covenants, representations and warranties therein contained, and notwithstanding that the Purchased Accounts are Plaintiff's property, Plaintiff has the right to service all of LPG's accounts and make withdrawals from all of LPG's Clients.

**LPG and Oakstone Act To Contravene Plaintiff's Rights**

23. For months after LPG's and Plaintiff's entry into the above described *Assignment* and *Agreements*, Plaintiff serviced the Clients' accounts, using data in LPG's software systems and processing withdrawals from the Clients' bank accounts, all in accordance with the parties' contractual arrangements and without objection from LPG.

24. However, in recent weeks LPG and Oakstone have taken actions in derogation of Plaintiff's rights as aforesaid.

25. On or about February 2, 2023, LPG implemented changes to its software systems so as to completely deny Plaintiff access thereto. Notwithstanding Plaintiff's repeated protests about this breach of LPG's obligation to provide "unfettered access," LPG has not restored such access. The lack of such access impairs Plaintiff's ability to accurately service the Clients' accounts.

26. On or about February 6, 2023, Plaintiff received an unsigned email purporting to be from legal@lpglaw.com directing Plaintiff to cease and desist from processing payments on any of the Clients' accounts. The email purports to disavow the *Assignment*, yet offers to discuss resolution of "this dispute." *See* Exhibit A annexed hereto.

27. On information and belief, at about the same time, most of LPG's employees were discharged from its employ, and some, including at least two lawyers,

10

became employees of Oakstone, which had been formed only one month earlier.

28. On February 10, 2023, Oakstone, through counsel, emailed Plaintiff a copy of a cease and desist letter that such counsel had sent to BankUnited ("*BankUnited Letter*"). *See* Exhibit B annexed hereto. The *BankUnited Letter* states that: (a) Oakstone has retained certain accounts from LPG and LPG has transferred its practice to Oakstone; and (b) Oakstone terminated BankUnited's "relationship" with those accounts on or about February 2, 2023, and has withdrawn any authorization to process automatic withdrawals from any customer account.

29. The *Assignment* prohibits LPG from taking the actions described in the BankUnited Letter.

30. The *BankUnited Letter* also enclosed a 300 page listing of clients, with bank account numbers and bank routing numbers (which list is not included in Exhibit B due to the sensitive nature of the information therein). The list includes thousands of accounts that are Purchased Accounts and, hence, Plaintiff's property.

31. On February 16, 2023, Oakstone, through counsel, initiated an action (the "**BankUnited Action**") against BankUnited in the District Court of Dallas County, Texas, 192nd Judicial District, under Cause No. DC-23-02116, seeking, among other things, a temporary restraining order and temporary and permanent injunctive relief enjoining BankUnited from processing debits on the accounts on the list enclosed with the *BankUnited Letter*. A copy of Oakstone's petition is annexed hereto as Exhibit C ("*Petition*").

32. According to the *Petition*, on or about January 11, 2023, two days after Oakstone was formed, an alleged secured creditor named PECC Corporation ("**PECC**") exercised remedies under an alleged promissory note and security interest. No detail was provided concerning the debt owed to PECC or the manner in which its remedies were exercised. The *Petition* further asserted that LPG terminated its agreements with its clients, an action prohibited by the *Assignment*, and referred such clients to Oakstone, which is described, notwithstanding that it only recently came

11

1 into existence, as a consumer protection law firm capable of servicing 15,000
2 customers. Oakstone claims to have entered new legal service agreements with the
3 15,000 clients and to have the exclusive authority to process payments from those
4 clients.

5     33. Although there is no express statement in the *Petition* that BankUnited is
6 processing withdrawals for Plaintiff, it is clear that Oakstone and LPG believe that to
7 be the case. Interestingly, however, and despite the fact that equitable relief sought in
8 the *Petition* would seriously impair, if not completely abrogate, Plaintiff's rights under
9 the aforesaid agreements, Oakstone failed to name Plaintiff in the *Petition*, thus
10 depriving Plaintiff with advance notice of its filing or a contemporaneous opportunity
11 to be heard in connection therewith.

12 **LPG and Oakstone are Alter Egos or Oakstone is a Mere Continuation of LPG**

13     34. On information and belief, the LPG-Oakstone transaction was a sham
14 transaction, put together for no consideration between affiliated or alter ego parties,
15 for the sole purpose of attempting to divest Plaintiff of its exclusive rights to service
16 LPG's accounts and Plaintiff's ownership of the Purchased Accounts, accounts for
17 which Plaintiff paid in excess of $10,000,000.

18     35. Prior to January 9, 2023, Oakstone did not exist.

19     36. On information and belief, at the time that the LPG-Oakstone transaction
20 took place, allegedly on January 11, 2023, Oakstone had no ability to provide any
21 types of legal services to 15,000 clients, much less specialized consumer protection
22 legal services.

23     37. On information and belief, much of LPG's staff, including at least two
24 lawyers, have been transferred to Oakstone.

25     38. On information and belief, Diab manages Oakstone's financial affairs,
26 just as he has been doing for LPG.

27     39. Although the California Secretary of State's records indicate that Daniel
28 S. March is the only officer of LPG, and the *Assignment* and *Agreements* were signed

by March as "Managing Shareholder," Plaintiff's dealings with LPG have been with Diab (excepting operations-related communications that have been with lower level employees).

40. From Plaintiff's recent communications with Diab, Plaintiff believes that Diab directs Oakstone's operations. Indeed, there may not be any other available representative with whom an interested party can communicate. Plaintiff's counsel asked Oakstone's counsel for the name of an Oakstone representative, and counsel professed not to recall the name of any such individual. Further, Oakstone's articles of incorporation identify CT Corporation System, not an individual, as Oakstone's registered agent, and Oakstone has yet to file an initial statement of information with the California Secretary of State.

41. Additionally, until approximately one week ago, Oakstone appeared to have only a single attorney, Jayde Trinh, a recent law school graduate and LPG attorney whose name remained on LPG's website.

42. As of February 19, 2023, Oakstone's website identified a single attorney, Scott J. Eadie, as its "head attorney." LPG's website also has a page describing Mr. Eadie. On information and belief, Mr. Eadie has become affiliated with LPG and Oakstone only very recently. On information and belief, for approximately 40 years Mr. Eadie has practiced worker's compensation law at his own law firm, which is still in operation. Mr. Eadie does not appear to have the experience needed to provide consumer protection legal representation to 15,000 consumers located across the United States, much less the background to handle such a firm's financial affairs.

43. Plaintiff's investigation of this matter is incomplete and is continuing. Plaintiff reserves the right to amend this Complaint to assert claims should circumstances so warrant.

## FIRST CLAIM FOR RELIEF

### (Breach of Contract– Against both Defendants)

44. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 43 hereof as if fully set forth herein

45. Defendants, acting in concert and/or as alter egos, have breached the *Assignment* and the *Agreements* by engaging in the conduct described above and such additional claims as may hereafter be proven, including but not limited to: (a) denying Plaintiff unfettered access to LPG's software systems; (b) terminating legal services agreements with customers and inducing such customers to entering into new legal services agreements with Oakstone; (c) attempting to terminate Plaintiff's ability to make withdrawals from customer accounts; (d) causing withdrawals from customer accounts to be made for amounts for which only Plaintiff was authorized to withdraw; and (e) sending the *BankUnited Letter* and filing the *Petition* in an attempt to divert revenue from Plaintiff.

46. As a result of this conduct, Plaintiff has been and will continue to be damaged. While the full amount of Plaintiff's damages is presently unknown, Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

47. Defendants, in engaging in the above-described conduct, are guilty of oppression, fraud and/or malice, and were acting with willful and conscious disregard of the rights of Plaintiff. Plaintiff is therefore entitled to punitive damages against Defendants in an amount appropriate to properly punish those defendants for their conduct and to deter similar future conduct.

48. Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary and permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties'

agents, servants, employees, and other persons or entities acting on their behalf, or purportedly acting on their behalf, from any transfer of any customer and client accounts, termination of any agreements with customers and clients, withdrawals from any customer or client accounts, and from taking any actions that by design or effect may dissuade or prevent any person from processing withdrawals submitted by or on behalf of Plaintiff.

## SECOND CLAIM FOR RELIEF

### (Intentional Interference with Contractual Relations - Against Oakstone)

49. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 48 hereof as if fully set forth herein.

50. As alleged herein, Plaintiff had and has valid existing contracts with LPG and has performed in accordance with such contracts.

51. Oakstone, as part of its business relationship with LPG, knew of the contracts between Plaintiff and LPG.

52. Oakstone, with the intent of disrupting and/or destroying the contracts between Plaintiff and LPG, engaged in the conduct described herein and such additional conduct as may hereafter be proven, including but not limited to: (a) participating in and assisting LPG in its alleged termination of legal services agreements with customers and entering into new legal services agreements with them; (b) causing withdrawals to be made from such customer accounts for amounts which only Plaintiff was authorized to withdraw; (c) sending the *BankUnited Letter* and filing the *Petition* in an attempt to diverting revenue from Plaintiff.

53. Oakstone's conduct was willful and in bad faith and intended to disrupt the performance of LPG's obligations under the contracts to prevent Plaintiff from recovering the monies it is owed so that LPG and Oakstone could keep the revenue for their own benefit.

54. As a result of this conduct, Plaintiff has been and will continue to be damaged. The full amount of Plaintiff's damages is presently unknown. Plaintiff is

entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

55. Oakstone, in engaging in the above-described conduct, is guilty of oppression, fraud and/or malice, and was acting with willful and conscious disregard of the rights of Plaintiff. Plaintiff is therefore entitled to punitive damages against Oakstone in an amount appropriate to properly punish such defendant for its conduct and to deter similar future conduct.

## THIRD CLAIM FOR RELIEF

### (Conversion – Against both Defendants)

56. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 55 hereof as if fully set forth herein.

57. Defendants have intentionally and substantially interfered with Plaintiff's property and rights without permission.

58. Defendants without authority intentionally deprived Plaintiff of possession and access to its personal property.

59. Defendants have wrongfully exercised dominion over property of Plaintiff.

60. Defendants have assumed control over Plaintiff's property and have precluded Plaintiff from access to Plaintiff's property.

61. As a result of this conduct, Plaintiff has been and continues to be damaged. The full amount of Plaintiff's damages is presently unknown. Plaintiff is entitled to recover such sums, together with interest thereon at the maximum legal rate according to the proofs.

## FOURTH CLAIM FOR RELIEF

### (Avoidance and Recovery of Fraudulent Transfers – Against Oakstone)

62. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 61 hereof as if fully set forth herein.

63. Plaintiff is a creditor of LPG.

64. LPG transferred assets to Oakstone with actual intent to hinder, delay and defraud its creditors.

65. LPG transferred assets to Oakstone without receiving a reasonably equivalent value in exchange for such transfer, and was engaged or about to engage in a business or transaction for which the remaining assets or LPG were unreasonably small in relation to the business or transaction, and/or intended to incur, or believed or reasonably should have believed that it would incur, debts beyond LPG's ability to pay as they became due.

66. Plaintiff was a creditor of LPG before LPG transferred assets to Oakstone.

67. LPG transferred assets to Oakstone without receiving reasonably equivalent value in exchange for the transfer and LPG was insolvent at the time of the transfer or became insolvent as a result of the transfer.

68. Plaintiff is entitled to avoidance of the transfer of LPG's assets to Oakstone and recovery of the assets for the benefit of Plaintiff.

## FIFTH CLAIM FOR RELIEF

**(Declaratory Relief – Against both Defendants)**

69. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 68 hereof as if fully set forth herein.

70. An actual conflict has arisen and now exists between Plaintiff and Defendants concerning Plaintiff's contractual rights and Defendants' interference with Plaintiff's rights.

71. Plaintiff desires a judicial determination and declaration of the rights of the parties. Such a determination is appropriate at this time so that Plaintiff may determine its rights and duties.

72. Plaintiff seeks damages and other relief as prayed.

## SIXTH CLAIM FOR RELIEF

**(Temporary Restraining Order, and Preliminary and Permanent Injunctions – Against Both Defendants)**

73. Plaintiff repeats and re-alleges each of the allegations set forth in paragraphs 1 through 72 hereof as if fully set forth herein.

74. Based on the foregoing, Plaintiff is also entitled to a temporary restraining order, and preliminary injunction and a permanent injunctions commanding Defendants to provide Plaintiff unfettered access to all of LPG's and Oakstone's software systems containing non-privileged client or customer data and restraining and enjoining Defendants, and anyone acting in concert with either of them, and all such parties' agents, servants, employees, and other persons or entities acting on their behalf, or purportedly acting on their behalf, from any transfer of any customer and client accounts, termination of any agreements with customers and clients, withdrawals from any customer or client accounts, and from taking any actions that by design or effect may dissuade or prevent any person from processing withdrawals submitted by or on behalf of Plaintiff.

75. Plaintiff will be irreparably harmed if a temporary restraining order and the injunctions are not issued as set forth above.

76. Plaintiff is likely to and will succeed on the merits of Plaintiff's claims in this action.

77. The equities in this action favor the granting of injunctive relief in Plaintiff's favor and the injunction is in the public interest.

78. Plaintiff has no adequate remedy at law as to future damages if the requested injunction is not issued.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1. For judgment in favor of Plaintiff on all causes of action;

2. For the temporary restraining order and preliminary and permanent injunctive relief requested in this Complaint;

3. For general damages, plus interest, according to the proofs at trial;

4. For lost profits according to the proofs at trial;

5. For punitive damages according to the proofs at trial;

6. For reasonable attorneys' fees and costs incurred herein to the extent permitted by statute or contract;

7. For prejudgment interest; and

For such other relief as the Court deems just and proper.

Dated: February 24, 2023

Respectfully submitted,

LOCKE LORD LLP

By: */s/ David Kupetz*
　　　David Kupetz
*Attorneys for Plaintiff MARICH BEIN LLC*

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA  90071

132011141v.1

19